# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 18-56801

BASRAH CUSTOM DESIGN, INC.,                     Chapter 11

        Debtor.                                Judge Thomas J. Tucker
_____/

## OPINION REGARDING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS, THE DEBTOR'S MOTION TO REJECT LEASE, AND THE MOTION BY MJCC 8 MILE, LLC FOR RELIEF FROM STAY

## I. Introduction

Among other things, this Chapter 11 case raises the question whether the Debtor's entanglement with a medical marijuana dispensary business, which business is illegal under federal criminal law but not necessarily illegal under Michigan law, requires the dismissal of this federal bankruptcy case. The Court concludes that dismissal is required.

This case came before the Court on March 6, 2019, for a hearing on three motions, namely: (1) the United States Trustee's motion to dismiss this case (Docket # 30, the "Dismissal Motion"); (2) the motion by the Debtor entitled "Debtor's Motion to Reject Executory Lease with MJCC 8 Mile, LLC" (Docket # 37, the "Lease Rejection Motion"); and (3) the motion by MJCC 8 Mile, LLC for relief from the automatic stay (Docket # 43, the "Stay Relief Motion").

After the hearing, after obtaining leave of Court to do so,[1] the Debtor filed a supplemental brief in further support of its position on the pending motions, and the United States Trustee and MJCC 8 Mile, LLC filed responses to the Debtor's supplemental brief.[2] The Court has reviewed

---

[1] *See* Order Allowing Debtor's Supplemental Brief, [etc.], filed March 18, 2019 (Docket # 90).

[2] Docket ## 88-1, 96, 99.

those post-hearing papers filed by the parties.

The Court has considered all of the oral and written arguments of the parties, and all of the briefs and exhibits filed by the parties. For the reasons stated in this opinion, the Court will deny the Debtor's Lease Rejection Motion, grant the United States Trustee's Dismissal Motion, and deny the Stay Relief Motion as moot.

## II.  Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(G), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen (In re Trans–Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 1112, 365, and 362. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III.  Discussion

### A.  Background

The Debtor filed this Chapter 11 bankruptcy case on December 16, 2018.[3] The Debtor is

---

[3] This is the Debtor's second Chapter 11 bankruptcy case. The Debtor filed its first such case in this Court on April 19, 2013 (Case No. 13-47956). That case was dismissed on October 25, 2013, with a 180-day bar to refiling, after the Debtor failed to timely file a plan and disclosure statement. *See* Order

2

a Michigan corporation that "is in the business of manufacturing and installing custom cabinets[.]"[4]  The Debtor occupies and uses two conjoined buildings, located at 7451 and 7461 West 8 Mile Road, Detroit, Michigan.  That real estate (the "Nocha Property") is owned by Weaam Nocha, who is the President and sole shareholder of the Debtor.[5]  It is undisputed that the Debtor is not, and never has been, an owner of the Nocha Property.[6]

## B.  The November 16, 2016 Lease, and the Debtor's pre-petition state court litigation with MJCC 8 Mile, LLC

Before filing this bankruptcy case, the Debtor, Weaam Nocha, and others were defendants in a state court lawsuit filed by MJCC 8 Mile, LLC, captioned *MJCC 8 Mile, LLC v. Basrah Custom Design, Inc., et al.*, Case No. 17-001663 (Wayne County, Michigan Circuit Court) (the "State Court Lawsuit").

In the State Court Lawsuit, MJCC 8 Mile, LLC ("MJCC") claimed to have the right to possession of the Nocha Property under a written lease, which lease also gave MJCC an option to

---

Dismissing Case, filed October 25, 2013 (Docket # 79 in Case No. 13-47956).

[4]  Debtor's Obj. to the U.S. Trustee's Mot. to Dismiss (Docket # 40) at 2, ¶ 3.

[5]  *See* Debtor's Obj. to the U.S. Trustee's Mot. to Dismiss (Docket # 40) at 2, ¶ 4; Petition (Docket # 1) at 4; Statement Regarding Authority to Sign and File Petition, filed December 16, 2018 (Docket # 3); Statement of Debtor Regarding Corporate Ownership, and List of Equity Security Holders, filed December 25, 2018 (Docket # 10).  The Debtor admitted that Weaam Nocha is the owner of the Nocha Property, in answering the United States Trustee's motion to dismiss.  (Debtor's Obj. to the U.S. Trustee's Mot. to Dismiss (Docket # 40) at 2, ¶ 4.)  But in another pleading, involving a different motion, the Debtor stated that the Nocha Property is owned by "Weaam Nocha . . . and his wife, Rafah Dawood[.]"  (Debtor's Mot. to Enforce the Automatic Stay, [etc.] (Docket # 104) at 1-2, ¶ 2; Debtor's Br. (Docket # 104-1) at 2-3).  But in that same pleading, the Debtor stated that this property is owned by "Nocha and/or Dawood."  (*See* Debtor's Mot. to Enforce the Automatic Stay, [etc.] (Docket # 104) at 2, ¶ 5; Debtor's Br. (Docket # 104-1) at 3, 18).  In yet another pleading, the Debtor stated that the Nocha Property is owned "by Weaam Nocha and/or his wife, Rafah Dawood."  (Debtor's Obj. to MJCC's Mot. to Lift Stay (Docket # 73) at 3).  This inconsistency in the Debtor's pleadings is not material to the Court's decision on the pending motions.

[6]  *See, e.g.*, Debtor's Obj. to the U.S. Trustee's Mot. to Dismiss (Docket # 40) at 4, ¶ 21.

3

purchase the Nocha Property. MJCC sought enforcement of that lease and the purchase option.

The lease was executed on November 16, 2016, and is referred to in this Opinion as the

"November Lease" or the "November 2016 Lease." A copy of the November Lease appears in

the record of this case as Exhibit 1 to the brief filed by the Debtor on February 8, 2019.[7]

The November Lease named the Debtor as the "Landlord" and MJCC as the "Tenant,"

and it was signed on November 16, 2016 by Weaam Nocha for the Debtor, as "Its Owner," and

by MJCC.

Under the November Lease, MJCC leased the part of the Nocha Property located at 7461

West 8 Mile Road, for an initial term of 5 years, renewable by MJCC for 6 additional 5-year

terms.[8] During that lease term, MJCC also had the option to lease the adjacent part of the Nocha

Property, located at 7451 West 8 Mile Road, also for an initial term of 5 years, renewable by

MJCC for 3 additional 5-year terms.[9] The November Lease also gave MJCC an option to

purchase the Nocha Property, for $1.2 million.[10]

It is undisputed, and was clearly understood by all parties at the time of the signing of the

November Lease, that MJCC's purpose in entering into the November Lease was to use the

Nocha Property to operate a medical marijuana dispensary. And this is clear from the face of the

November Lease. For example, the document stated that "[t]he Premises will be used for a

licensed medical marijuana dispensary (the '**Designated Use**') and for no other purpose

---

[7] Docket # 41-1.

[8] *See* November Lease at 1, ¶ 1 and Ex. A thereto.

[9] *See id.* at 12, ¶ 39 and Ex. B thereto.

[10] *See id.* at 12, ¶ 40 and Ex. C thereto; *see also* discussion of the relief granted by a decision of the state court in the State Court Lawsuit discussed below.

4

whatsoever."[11] And the initial 5-year term of the Lease was to begin "on the date Tenant receives approval from the City of Detroit for its Designated Use[.]"[12]

The defendants in the State Court Lawsuit were the Debtor, Weaam Nocha, Rafaa Nocha (Weaam Nocha's wife, a/k/a Rafaa Dawood), Holden Dawood (the Nochas's son), and DMCC, LLC (a limited liability company formed by the defendants). All of the defendants jointly defended against MJCC's claims, and opposed the efforts of MJCC to obtain possession of or purchase the Nocha Property. One of their primary defenses was that MJCC "fraudulently tricked" Weaam Nocha into signing the November Lease.[13]

It is undisputed that in seeking relief in the State Court Lawsuit, and in now seeking stay relief in this Court, MJCC has sought possession and ownership of the Nocha Property, in order to use that property as a medical marijuana dispensary. Such a marijuana business apparently would not violate Michigan law, but as discussed below, it would violate federal criminal law.

**C. The State Court Decision**

The State Court Lawsuit went to trial, and on December 7, 2018, the state court found for MJCC, in a lengthy written opinion and order, entitled "Finding of Facts and Conclusions of Law" (the "State Court Decision"). A copy of the State Court Decision appears in the record of this case as Exhibit 4 to the Debtor's brief filed on February 8, 2019.[14]

As discussed in Part III.D of this Opinion, below, the findings and conclusions of the

---

[11] November Lease at 2, ¶ 4 (emphasis in original).

[12] *Id.* at 1, ¶ 1.

[13] The Debtor continues to make this assertion in this bankruptcy case. (*See, e.g.*, Debtor's Obj. to the U.S. Trustee's Mot. to Dismiss (Docket # 40) at 2, ¶ 8).

[14] Docket # 41-4.

5

State Court Decision are binding in this Court, on the Debtor, Weaam Nocha, and MJCC, under the doctrine of collateral estoppel. For this reason, and because they are important to this Court's decision on the pending motions, the Court will describe the state court's findings and conclusions in detail.

In the State Court Decision, the state court found and concluded, among other things, that:

- Weaam Nocha was ***not*** tricked or fraudulently induced into signing the November Lease;[15]

- at the time the November Lease was signed, the Nocha Property was owned solely by Weaam Nocha;[16]

- Weaam Nocha signed the November Lease as an agent of the Debtor, ***and*** the Debtor in turn signed the November Lease as agent of and on behalf of the owner of the property at issue, Weaam Nocha;[17]

- the November Lease, including the purchase option it contains, is valid and enforceable by MJCC;[18]

- the term of the November Lease began on November 10, 2016, and MJCC's right to exclusive possession of the Nocha Property began on November 26, 2016.[19]

---

[15] *See, e.g.,* State Court Decision at ¶¶ 69, 96, 97.

[16] *Id.* at ¶¶ 155, 156, 168.

[17] *See id.* at ¶¶ 63, 124, 155, 156, 158, 165-170, 176. This latter finding of the state court, that the Debtor signed the November Lease as agent of and on behalf of the sole owner, Weaam Nocha, makes sense because the state court found that Weaam Nocha, not the Debtor, was the "sole owner" of the Nocha Property. Moreover, Weaam Nocha's status as the real party-in-interest lessor under the November Lease is clearly implied in the state court's findings that (1) "as the sole owner of the [Nocha] Property, Mr. Nocha had full authority to grant possessory rights to the [Nocha] Property;" *id.* at ¶ 158; and (2) the Debtor had the authority, as agent, to bind Weaam Nocha to "lease the [Nocha] Property;" *see id.* at ¶¶ 165-167, 170.

[18] *See id.* at ¶¶ 94, 106, 123.

[19] *See id.* at ¶¶ 53, 58, 109, 152. The November Lease was signed on November 16, 2016, and states in the first paragraph that its "Effective Date" was November 16, 2016. (November Lease at 1). As the State Court Decision found, MJCC's right to exclusive possession of the Nocha Property began 10

6

The State Court Decision found that the Nocha Property is one of the very few properties located within the City of Detroit that is available and suitable for conducting a medical marijuana dispensary. The state court found that "there are very few fully compliant properties in the City [of Detroit]" where one can "open a medical marijuana dispensary."[20] This is "due to the tight restrictions imposed by Detroit's Medical Marijuana Zoning Ordinance."[21] But the Nocha Property is such an available property — as the state court put it, the property is "in the 'green zone.'"[22]

The state court also found that the efforts by Weaam Nocha, the Debtor, and the other

---

days after the Effective Date of the November Lease, *i.e.*, on November 26, 2016. (*See* State Court Decision at ¶ 109; November Lease at 3, ¶ 8).

The "term" of the November Lease, and MJCC's obligation to pay rent, was defined to occur "beginning on the date [MJCC] receives approval from the City of Detroit for its Designated Use [*i.e.*, as a 'licensed medical marijuana dispensary']." (*See* November Lease at 1, ¶ 1; 2, ¶ 4). As the State Court Decision found, this identical language was contained in an earlier lease signed by the parties on February 15, 2016 (referred to in the State Court Decision as the "February Lease"), which February Lease was later replaced by the November Lease. And the State Court Decision also found that this required approval from the City of Detroit was obtained by MJCC on November 10, 2016. (*See* State Court Decision at ¶¶ 15, 53, 58, 152). Although the State Court Decision found in one paragraph of the decision that the City of Detroit's approval was a "conditional" approval, (State Court Decision at ¶ 58 ("On November 10, 2016, the City of Detroit granted MJCC conditional approval for a license to operate a [medical marijuana] Dispensary.")), the State Court Decision made clear in at least two other paragraphs that the November 10, 2016 approval by the City of Detroit was sufficient to trigger the beginning of the Lease "term" under the identical language in the February Lease and the November Lease. (*See* State Court Decision at ¶ 53 (finding that MJCC's obligation to pay rent under the terms of the February Lease began when it "obtained approval from the City of Detroit to operate a medical marijuana dispensary at the Property . . . [which it obtained on] November 10, 2016"), ¶ 152 (finding that "the date [MJCC] receive[d] approval from the City of Detroit for its Designated Use [a licensed medical marijuana dispensary]" was November 10, 2016 ("MJCC obtained approval from the City of Detroit on November 10, 2016, but Defendants refused to give them possession.")

[20] State Court Decision at ¶¶ 2-3.

[21] *Id.* at ¶ 2.

[22] *Id.* at ¶ 5.

defendants to avoid enforcement of the November Lease, including its purchase option, were motivated by a desire to make more money from the Nocha Property, either by (1) renting or selling the Nocha Property to MJCC, or someone else in the medical marijuana business, for a higher rent or a higher sale price than the $1.2 million price set by the purchase option in the November Lease; or (2) using the property to open and operate a marijuana dispensary themselves.

The State Court Decision described, in detailed findings:[23]

• how Weaam Nocha and his wife, Rafaa, continually demanded more money from MJCC for the lease or purchase of the Nocha Property, even after the November Lease was signed, demanding, for example, an increase in rent from the $5,000.00 per month in the November Lease[24] to $7,500.00 per month, and demanding $1.5 million to sell the property to MJCC instead of the $1.2 million agreed to in the November Lease's purchase option;[25]

• how MJCC refused the Nochas's greater financial demands, and instead insisted on performance of the November Lease;[26]

• how the Nochas then reacted by refusing to honor the November Lease;[27] and

• how all of the state court defendants — *i.e.*, the Debtor, Weaam Nocha, Rafaa Nocha, and their son Holden Dawood — then decided to open and operate a medical marijuana dispensary themselves at the Nocha Property, and went to great lengths to try to do so; including the defendants' formation of a new LLC — the defendant DMCC, LLC — to obtain a license from the City of Detroit to operate a medical marijuana dispensary.[28]

Based on its detailed findings, the state court entered a judgment in favor of MJCC and

---

[23] *See*, *e.g.*, *id.* at ¶¶ 54-56, 55 n.5, 59, 70-79, 139-147.

[24] November Lease at 1, ¶ 2(a).

[25] *See*, *e.g.*, State Court Decision at ¶¶ 70-74, 55 & n.5.

[26] *See*, *e.g.*, *id.* at ¶¶ 72, 76.

[27] *See*, *e.g.*, *id.* at ¶ 76.

[28] *See*, *e.g.*, *id.* at ¶¶ 76-79, 139-147.

against the defendants.[29]  For relief, "given the validity of the November 2016 Lease," the State

Court Decision ordered that MJCC could elect one of two options.[30]

Under the first option, MJCC could elect to have a "[d]eclaratory judgment that the

November 2016 Lease is valid and enforceable."  Under this option, MJCC was required to

"exercise[] its option [under the November 2016 Lease] to purchase the entire property (7451

and 7461) for [$]1.2 million" and MJCC would obtain the "immediate transfer of ownership to

DMCC to Plaintiff[] along with possession of the Property."[31]

Under the second option, MJCC could elect to have a declaratory judgment that "the

November 2016 [L]ease [is] null and void," plus a money judgment in the total amount of

$713,658.72.[32]  Under this option, "Defendants would maintain ownership of the property and

the Marijuana license."[33]

MJCC elected the first of these alternative forms of relief, and desires to close, as soon as

possible, on its purchase of the Nocha Property for the $1.2 million price.  This is so MJCC can

begin to operate its medical marijuana dispensary business on the Nocha Property as soon as

possible.

Nine days after the State Court Decision, and in direct response to it, the Debtor filed this

bankruptcy case.  The Debtor and the other state court defendants also filed an appeal of the State

---

[29]  *Id.* at 27.

[30]  *Id.*

[31]  *Id.*

[32]  *Id.*

[33]  *Id.*

Court Decision to the Michigan Court of Appeals, which appeal is pending.

**D. The preclusive effect of the State Court Decision, under the doctrine of collateral estoppel**

As the Debtor's counsel conceded during the hearing, the findings and conclusions of the state court in the State Court Decision are binding on the Debtor and MJCC. Those parties are precluded from contesting such findings and conclusions in this bankruptcy case, under the doctrine of collateral estoppel. And this is so even though the Debtor has appealed the State Court Decision.

This Court previously has explained how collateral estoppel applies in bankruptcy cases, under the federal Full Faith and Credit Statute, 28 U.S.C. § 1738:[34]

> "In determining whether a state court judgment precludes relitigation of issues under the doctrine of collateral estoppel, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires bankruptcy courts to "'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985)). If the state courts would not deem the judgment binding under collateral estoppel principles, then the bankruptcy court cannot do so either. But if the state courts would give preclusive effect to the judgment, then the bankruptcy court [generally] must also give the judgment preclusive effect[.]"

*Taleb v. Kramer* (*In re Kramer*), 543 B.R. 551, 553 (Bankr. E.D. Mich. 2015) (footnote omitted)

---

[34] The Full Faith and Credit Statute states, in relevant part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

28 U.S.C. § 1738.

(quoting *McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 775-76 (Bankr. E.D. Mich. 2011));

*see also In re Indiana Hotel Equities, LLC*, 586 B.R. 870, 875 (Bankr. E.D. Mich. 2018) (same).

Because the State Court Decision was entered in the Wayne County Circuit Court in the state of Michigan, the Court must look to Michigan law to determine the collateral estoppel effect of that decision. As this Court has explained in prior cases,

> Under Michigan law, the following requirements must be met in order for collateral estoppel to apply:
>
> 1) there is identity of parties across the proceedings,
>
> 2) there was a valid, final judgment in the first proceeding,
>
> 3) the same issue was actually litigated and necessarily determined in the first proceeding, and
>
> 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.
>
> *Phillips v. Weissert* (*In re Phillips* ), 434 B.R. 475, 485 (6th Cir. BAP 2010) (citation omitted).
> . . .
>
> Under Michigan law, an issue is "actually litigated" if it is "put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined." *Phillips*, 434 B.R. at 486 (majority opinion) (quoting *Latimer v. William Mueller & Son, Inc.*, 149 Mich.App. 620, 386 N.W.2d 618, 627 (1986)); *Phillips*, 434 B.R. at 490 (Rhodes, J., concurring) (same).
> . . .
>
> An issue that is "actually litigated" is also considered to be "necessarily determined" if "it is necessary to the judgment." *See id.* at 493; *see also Rohe Scientific Corp. v. Nat'l Bank of Detroit*, 133 Mich.App. 462, 350 N.W.2d 280, 282 (1984) (citation omitted) . . . .

11

*Pixley I*, 456 B.R. at 776, 778-79.

*Lenchner v. Korn* (*In re Korn*), 567 B.R. 280, 298-99 (Bankr. E.D. Mich. 2017).

With respect to each of the findings and conclusions recounted in this Opinion from the State Court Decision, all of the requirements for the application of collateral estoppel are met: (1) the relevant parties (the Debtor, Weaam Nocha, and MJCC) are the same; (2) the State Court Decision is a valid, final judgment; (3) the issues were actually litigated and necessarily determined by the State Court Decision; and (4) all the parties in the State Court Lawsuit, including the Debtor, Weaam Nocha, and MJCC, had a full and fair opportunity to litigate the issues decided in the State Court Decision.

The State Court Decision is considered a valid, final judgment for collateral estoppel purposes, even though the Debtor and Weaam Nocha have appealed that decision to the Michigan Court of Appeals. *See Taleb v. Kramer*, 543 B.R. at 559 ("[U]nder Michigan law, a final . . . judgment has preclusive effect under the doctrine of collateral estoppel . . . even when the judgment is on appeal or the time for appeals has not yet expired."). Collateral estoppel therefore applies, and in effect, the parties to the State Court Decision, including the Debtor, Weaam Nocha, and MJCC, are bound by the findings and conclusions in the State Court Decision, unless and until that State Court Decision is reversed, vacated, or modified on appeal. And counsel for the Debtor explicitly conceded this, during the hearing.

**E. Discussion of the Debtor's motion to reject the November 2016 Lease, under Bankruptcy Code § 365.**

In its Lease Rejection Motion, the Debtor seeks an order allowing it to reject the November 2016 Lease. MJCC opposes that motion on several grounds. The United States

12

Trustee also opposes that motion, because he seeks dismissal of this case.

The Court must deny the Debtor's Lease Rejection Motion, for two reasons. First, the November Lease is not a lease that the Debtor may reject under 11 U.S.C. § 365, because the Debtor is not a real party in interest under that lease. Rather, the Debtor signed the November Lease only in its capacity as agent for the one and only owner of the Nocha Property at issue, namely, Weaam Nocha. This is conclusively established by the State Court Decision, as noted in parts III.C and III.D of this Opinion. As a result, the Debtor cannot assume or reject the November Lease under § 365. That section says that a "trustee," which includes a Chapter 11 debtor-in-possession under 11 U.S.C. § 1107(a), "subject to the court's approval, may assume or reject any executory contract or unexpired lease **of the debtor**." 11 U.S.C. § 365(a) (emphasis added). Many of the subsections in § 365 use this phrase, executory contract or unexpired lease "of the debtor," and thereby reinforce the point that § 365 applies only to such contracts "of the debtor." *See, e.g.,* 11 U.S.C. §§ 365(b)(1), 365(b)(4), 365(c), 365(d)(1), 365(d)(2), 365(e)(1), 365(e)(2), 365(f)(1), 365(f)(2), 365(f)(3), 365(g), 365(i)(1).

The November Lease is not a lease "of the debtor" but rather is a lease of the Debtor's 100% shareholder, Weaam Nocha, who at the time of the November Lease was the only owner of the subject property. (As noted in Part III.A of this Opinion, it is undisputed that the Debtor is not and never has been an owner of the subject property.) The Debtor therefore cannot assume or reject the November Lease, so the Debtor's Lease Rejection Motion must be denied.

That Motion also must be denied for a second reason, namely, because this bankruptcy case must be dismissed, for the reasons discussed below.

**F. Discussion of the United States Trustee's Dismissal Motion**

The United States Trustee (the "UST") seeks dismissal of this bankruptcy case, for "cause" under 11 U.S.C. § 1112(b)(1). That section states:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). In partially defining what the general "cause" standard in § 1112(b)(1) means, "[s]ection 1112(b)(4) contains a nonexhaustive list of examples of 'cause' justifying dismissal of a Chapter 11 case." *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).

> In determining whether cause exists to dismiss a case under § 1112(b), a court must engage in a "case-specific" factual inquiry which "focus[es] on the circumstances of each debtor." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371–72 (5th Cir.1987) (en banc), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr.W.D.Tenn.1992).

*Id.*; *see also In re Skymark Properties II, LLC*, 597 B.R. 391, 395-96 (Bankr. E.D. Mich. 2019).

## 1. The federal Controlled Substances Act

The UST seeks dismissal of this case because of the Debtor's entanglement with a medical marijuana dispensary business. That business may well be legal under Michigan law,[35]

---

[35] Effective December 4, 2008, Michigan enacted legislation to allow the medical use of marijuana under state law, in the act known as the "Michigan Medical Marihuana Act," Mich. Comp. Laws Ann. §§ 333.26421 through 333.26430. This Act was passed by voter initiative, by the approval of Michigan voters in the November 2008 election. This Act was later amended, with amendments that became effective April 1, 2013, December 20, 2016, and April 10, 2017. Also added to Michigan law, in 2016, was the "Marihuana Tracking Act" (effective December 20, 2016 and later amended effective

14

and the Court will assume as much for purposes of deciding the Dismissal Motion.  But it is clear that such a marijuana dispensary business is illegal under federal law.

There is no dispute that operating a medical marijuana dispensary is a violation of the federal Controlled Substances Act, 21 U.S.C. §§ 801-904 (the "CSA").  Marijuana is an illegal Schedule I controlled substance under the CSA, *see* 21 U.S.C. § 812(c)(10), despite the adoption by several states in recent years of laws permitting the sale and use of marijuana for medical and/or recreational purposes.  *See generally Gonzales v. Raich*, 545 U.S. 1, 10-15 (2005).  As the Supreme Court explained in *Gonzales v. Raich*,

> In enacting the CSA, Congress classified marijuana as a Schedule I drug.  21 U.S.C. § 812(c). . . . By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study.  §§ 823(f), 841(a)(1), 844(a); *see also United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 490, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).
> . . .
>
> Despite considerable efforts to reschedule marijuana, it remains a Schedule I drug.

---

March 21, 2019), Mich. Comp. Laws Ann. §§ 333.27901 through 333.27904, and the "Medical Marihuana Facilities Licensing Act" (effective December 20, 2016 and later amended effective January 26, 2018, January 1, 2019, March 28, 2019, and April 16, 2019), Mich. Comp. Laws Ann. §§ 333.27101 through 333.27801.

Recently, Michigan enacted legislation to make marijuana legal under state and local law for recreational use, for adults 21 years of age or older.  This legislation was passed by voter initiative, by the approval of Michigan voters in the November 2018 election.  It became effective on December 6, 2018, and is known as the "Michigan Regulation and Taxation of Marihuana Act," Mich. Comp. Laws Ann. §§ 333.27951 through 333.27967.  Among other things, this Act provides for the licensing, regulation, and taxation of "marihuana establishments."  The Act gives the Michigan Department of Licensing and Regulatory Affairs up to one year after the effective date of the Act (*i.e.*, until December 6, 2019) to promulgate rules for implementation of the Act.  *See*  Mich. Comp. Laws Ann. §§ 333.27953(b),  333.27953(h), 333.27957, 333.27958, 333.27966.

15

545 U.S. at 14-15 (footnote omitted).  Of the statutes cited by the Supreme Court in *Gonzales v. Raich*, 21 U.S.C. § 841(a)(1) makes it a crime "knowingly or intentionally . . . to manufacture, distribute, or dispense" a controlled substance, including marijuana, and that statute provides for criminal penalties including imprisonment and fines.  *E.g.*, 21 U.S.C. § 841(b)(1)(D).

And as the UST points out, operating a medical marijuana dispensary, or owning or renting a place operating as such a dispensary, also would be a federal crime under 21 U.S.C. § 856(a).  That section states:

> Except as authorized by this subchapter, it shall be unlawful to—
>
> > (1) **knowingly** open, **lease, rent, use, or maintain any place**, whether permanently or temporarily, **for the purpose of manufacturing, distributing, or using any** controlled substance;
> >
> > (2) **manage or control any place**, whether permanently or temporarily, **either as an owner, lessee, agent, employee, occupant**, or mortgagee, **and knowingly and intentionally rent, lease, profit from, or make available for use**, with or without compensation, **the place for the purpose of unlawfully** manufacturing, storing, **distributing**, or using **a controlled substance**.

21 U.S.C. § 856(a)(1)-(2) (emphasis added).  Violation of this statute subjects one to possible imprisonment of up to 20 years, and a possible criminal fine of up to $2 million "for a person other than an individual," as well as the possibility of substantial civil penalties.  *See* 21 U.S.C. §§ 856(b), 856(d).

## 2.  Bankruptcy cases

Because of these federal statutes, several bankruptcy courts have found cause to dismiss a bankruptcy case filed by a debtor whose income was derived, directly or indirectly, at least in

16

part, from the business of selling marijuana.  For example, in *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799, 802-04 (Bankr. D. Colo. 2012), the bankruptcy court found that the Chapter 11 debtor had "unclean hands," and that "cause" existed under 11 U.S.C. § 1112(b) to dismiss or convert the bankruptcy case, because the debtor derived roughly 25% of its revenues from leasing warehouse space to tenants engaged in the business of growing marijuana.  The court found that the debtor's business "involves a continuing violation of the federal Controlled Substances Act," even though the marijuana growing activity was "arguably legal under Colorado law." 484 B.R. at 802 (footnote omitted).  The court held that "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime."  *Id.* at 805 (footnote omitted).

This is so, the *Rent-Rite* court held, "even if the Debtor is never charged or prosecuted under the CSA," and even though, generally, "federal prosecutors may well choose to exercise their prosecutorial discretion and decline to seek indictments under the CSA where the activity that is illegal on the federal level is legal under . . . state law."  484 B.R. at 805.

In another case arising in Colorado, *Arenas v. United States Trustee* (*In re Arenas*), 535 B.R. 845 (B.A.P. 10th Cir. 2015), the Bankruptcy Appellate Panel (the "B.A.P.") for the Tenth Circuit affirmed the bankruptcy court's dismissal of a Chapter 7 case filed by a marijuana grower and his wife.  The B.A.P. stated:

> Possessing, growing, and dispensing marijuana and assisting others to do that are federal offenses.  But like several other states, Colorado has legalized these acts and heavily regulates them, triggering a flourishing marijuana industry there.  **Can a debtor in the marijuana business obtain relief in the federal bankruptcy court?  No.**

17

535 B.R. at 847 (emphasis added).

In *Arenas*, one of the joint debtors was licensed in Colorado "to grow and dispense medical marijuana," and he did so in one of the two units of a commercial building that the debtors jointly owned.[36] The debtors leased the other unit of their building to an LLC that operated a marijuana dispensary. *Id.* The bankruptcy court denied a motion by the debtors to convert their case to Chapter 13, and granted a motion by the United States Trustee to dismiss the case, for cause under 11 U.S.C. § 707(a). *Id.* at 848. The B.A.P. affirmed the bankruptcy court's decisions. The B.A.P. found that while the debtors' activities were legal under Colorado state law, they violated the CSA. *Id.* at 847. It held that "while the debtors have not engaged in intrinsically evil conduct, the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes." *Id.* at 849-50. The B.A.P. also held that a bankruptcy trustee could not administer the marijuana assets, including the marijuana plants and the debtors' building, because that would violate federal criminal law. *See id.* at 852-53. The court noted that "[t]he CSA criminalizes virtually every aspect of selling, manufacturing, distributing and profiting from the use of controlled substances." *Id.* at 852 n.40 (citing 21 U.S.C. §§ 841(a)(1) and 856(a)).

Finally, in the case of *In re Way to Grow, Inc.*, 597 B.R. 111 (Bankr. D. Colo. 2018), the bankruptcy court dismissed the Chapter 11 cases of three affiliated companies, because of the debtors' involvement in a marijuana-related business. That involvement was more indirect than that of the debtors in the other cases, discussed above. In *Way to Grow*, the court described the debtors' business as follows:

---

[36] *Id.*

18

> Debtors' business involves the sale of equipment for indoor
> hydroponic and gardening-related supplies. As to their customers'
> uses of their products, Debtors have represented "[w]hile the
> hydroponic gardening equipment may [be] and is used for many
> types of crops, the Debtors' future business expansion plan is tied
> to the growing cannabis industry which is heavily reliant on
> hydroponic gardening."

597 B.R. at 114-15 (footnote omitted). After citing certain provisions of the CSA, namely 21

U.S.C. §§ 812 and 841(a)(1), quoted above, the court in *Way to Grow* further noted that

> the CSA prohibits any person from possessing or distributing "any
> equipment . . . product or material which may be used to
> manufacture a controlled substance . . . knowing, intending, or
> having reasonable cause to believe, that it will be used to
> manufacture a controlled substance" in violation of federal law.
> The CSA also expressly provides any person who "conspires to
> commit any offense" under the CSA shall be subject to the same
> penalties as the principal.

597 B.R. at 116 (footnotes omitted) (citing 21 U.S.C. §§ 843(a)(6), 843(a)(7), and 846).

The *Way to Grow* court observed that "bankruptcy courts have consistently dismissed

cases where debtors engaged in ongoing CSA violations, or where a debtor's reorganization

efforts depend on funds which can be considered proceeds of CSA violations." 597 B.R. at

117.[37] The court ultimately concluded that the debtors' business violated the CSA, both before

and after filing their bankruptcy cases:

---

[37] The *Way to Grow* court noted that "there remains an ever-shifting landscape of federal
enforcement of marijuana criminalization where the same activity is fully legal under state law." 597
B.R. at 117 (footnote omitted). As an example of this "ever-shifting landscape," the court cited the
Trump administration's 2018 revocation of the enforcement policy announced in 2013 by the Obama
administration. *Id.* at 117 n.24 (citing "James M. Cole, Deputy Attorney General, MEMORANDUM
FOR ALL UNITED STATES ATTORNEYS: GUIDANCE REGARDING MARIJUANA
ENFORCEMENT (Aug. 29, 2013) (commonly known as the "Cole Memo"); *but see* Jeffrey B. Sessions,
Attorney General, MEMORANDUM FOR ALL UNITED STATES ATTORNEYS: MARIJUANA
ENFORCEMENT (January 4, 2018) (revoking Cole Memo)").

19

> Debtors certainly know they are selling products to customers who will, and do, use those products to manufacture a controlled substance in violation of the CSA. Debtors tailor their business to cater to those needs, tout their expertise in doing so, and market themselves consistent with their knowledge. There is no evidence this business model has materially changed post-petition.
>
> The Court concludes Debtors' business model and execution thereof fundamentally violates § 843(a)(7). These violations continue post-petition, . . ..

*Id.* at 131. Because of this, the court found, "inescapably," that there was cause to dismiss the

bankruptcy case under 11 U.S.C. § 1112(b). *Id.* at 132. And because the court saw "no practical

alternative to dismissal," the court dismissed the bankruptcy case. *Id.* This result, the court held,

was necessary "[t]o prevent this Court from violating its oath to uphold federal law[.]" *Id.*[38]

---

[38] In addition to the cases discussed in this Opinion, this Court has reviewed and considered all of the cases cited by the parties. And the Court is aware of the May 2, 2019 decision by the Ninth Circuit Court of Appeals, in *Garvin v. Cook Invs. NW*, No. 18-35119, 2019 WL 1945280 (9th Cir. May 2, 2019). In *Garvin*, the Court of Appeals for the Ninth Circuit affirmed a bankruptcy court's confirmation of a Chapter 11 plan, over the objection of the UST, even though one of the debtors had a tenant who was involved in a marijuana growing operation. But *Garvin* involved only a narrow issue of law that is not before this Court. The issue was whether the debtors' plan met the confirmation requirement in 11 U.S.C. § 1129(a)(3), that the plan be "proposed . . . not by any means forbidden by law." The court of appeals held that this provision in § 1129(a)(3) applies only to the "means of a reorganization plan's *proposal*, not its substantive provisions." *Garvin*, 2019 WL 1945280, at *1, 3 (italics in original). Thus, the court held that the quoted prong of § 1129(a)(3) was not violated by the substance of the confirmed plan, including the debtor's continuing to lease its building to a marijuana grower in violation of federal law.

In *Garvin*, earlier in the bankruptcy case, before the plan was confirmed by the bankruptcy court, the UST had filed a motion to dismiss, based on the one debtor's leasing to a marijuana grower. The dismissal motion argued that "cause" existed to dismiss that debtor's case, because of "gross mismanagement of the estate" by the debtor, within the meaning of 11 U.S.C. § 1112(b)(4)(B). 2019 WL 1945280, at *2. The bankruptcy court denied that dismissal motion, "but with leave to renew [it] at the plan confirmation hearing." *Garvin*, 2019 WL 1945280, at *2. But the UST failed to renew its dismissal motion at the confirmation hearing, and instead argued only its objection to confirmation based on § 1129(a)(3). In affirming confirmation of the debtors' plan, the court of appeals ruled that the UST waived its dismissal motion argument under § 1112(b). For this reason, the court of appeals refused to address that issue.

The decision of the Ninth Circuit Court of Appeals in *Garvin* is not binding on this Court, and,

### 3. This case

### a. "Cause" exists under § 1112(b)(1) to dismiss or convert this case.

The UST argues that the Debtor has filed and is pursuing this bankruptcy case with unclean hands, because the Debtor's purpose is not to disentangle from any marijuana-based business, but rather to enable its owner to profit from a marijuana business. The UST argues that the Debtor's real purpose is to use this bankruptcy case to help enable the Debtor's 100% shareholder, Weaam Nocha, to obtain a better marijuana-based deal than what is provided by the November Lease and the State Court Decision.

The Debtor denies that it has unclean hands. The Debtor says that it wants to disentangle itself from the November Lease, by rejecting that lease. The Debtor insists that it does not want to be involved in the marijuana business, but rather just wants to try to reorganize its custom cabinet business, and continue doing that business, at its existing location.

But this Court is bound to reject these assertions by the Debtor. It is clear and obvious to this Court, from the findings and conclusions in the State Court Decision, that the Debtor's sole shareholder, Weaam Nocha, caused the Debtor to file this bankruptcy case for the sole purpose of evading the State Court Decision, and avoiding the enforcement of the November Lease, so that Weaam Nocha does not have to sell the Nocha Property to MJCC for only $1.2 million. Weaam Nocha obviously wants to realize more money for himself, as owner of the Nocha Property, than what the enforcement of the State Court Decision will give him, either by (1) renting or selling

---

with respect, this Court does not necessarily agree with the *Garvin* court's holding about § 1129(a)(3). And, respectfully, one might reasonably question whether the *Garvin* court should have refused to decide the § 1112(b) dismissal issue. That refusal, on waiver grounds, arguably is questionable, because it allowed the affirmance, by a *federal* court, of the confirmation of a Chapter 11 plan under which a debtor would continue to violate *federal* criminal law under the CSA.

the Nocha Property to MJCC, or to some other marijuana dispensary business, for a higher rent or a higher sale price than $1.2 million; or (2) using the property to operate a marijuana dispensary himself, as he started to do with the help of his immediate family members before the State Court Decision was issued. Weaam Nocha did not cause the Debtor to file this bankruptcy case for the benefit of the Debtor or the Debtor's creditors, but rather solely for his own benefit — a benefit that depends on activity that is illegal under the CSA.

Borrowing from the words used by the UST in its motion, Weaam Nocha wants to use this bankruptcy case "to set aside this illegal contract [*i.e.*, the November Lease] so that he can negotiate a better illegal contract."[39]

Under Weaam Nocha's control, the Debtor denies these things. But these denials are precluded by the State Court Decision's findings and conclusions. The Debtor and Weaam Nocha both are bound by the findings and conclusions in the State Court Decision, under the doctrine of collateral estoppel. That means that they are precluded from now making assertions that are contrary to the findings and conclusions of the State Court Decision. And those findings and conclusions, described in Part III.C of this Opinion, inescapably lead to this Court's conclusions of what that the actual purpose of this bankruptcy case is.

The assertion that the Debtor, Weaam Nocha, and his family do not want the Nocha Property to be used or involved in the marijuana business, especially, is belied by the state court's detailed findings about all the efforts Weaam Nocha and his family went to in order to operate their own marijuana dispensary business at the Nocha Property, after refusing to honor the November Lease with MJCC. And then, only nine days after losing the State Court Lawsuit,

---

[39] UST Mot. (Docket # 30) at 1.

Weaam Nocha caused the Debtor to file this bankruptcy case (1) to try to "reject" the November Lease under Bankruptcy Code § 365; and (2) to try to obtain the benefit of the automatic stay to delay MJCC's obtaining ownership of the Nocha Property while Weaam Nocha, the Debtor, and the other state court defendants appeal the State Court Decision.

The actual purpose of filing and prosecuting this bankruptcy case is for the Debtor and its 100% shareholder to use this bankruptcy court, and the Bankruptcy Code, to assist them in obtaining a result that is contrary to federal criminal law under the Controlled Substances Act, and therefore contrary to federal public policy.

This federal court cannot allow itself to be used in this way. The Court finds that the Debtor has unclean hands, and that there is "cause" to dismiss or convert this case, under 11 U.S.C. § 1112(b)(1).

### b. There is no practical alternative to dismissal

Having found that cause exists to dismiss or convert this case under § 1112(b)(1), the Court next must determine which of these choices is "in the best interests of creditors and the estate."[40] The Court finds that dismissal, rather than conversion to Chapter 7, is in the best interests of creditors and the estate, for the following reasons.

First, a conversion to Chapter 7 would mean a liquidation of the Debtor, and the termination of the Debtor's business of manufacturing and installing custom cabinets. The

---

[40] No one has argued that it is in the best interests of the creditors and the estate to appoint a Chapter 11 trustee under 11 U.S.C. § 1104(a) or to appoint an examiner. *See* 11 U.S.C. § 1112(b)(1). The Court finds that neither of these choices is in the best interests of the creditors and the estate. This is so because neither of these options would serve any useful purpose in this case, and also for the same reasons why dismissal, rather than conversion, is in the best interests of the creditors and the estate, as discussed below. So the choice under § 1112(b)(1) is between dismissal and conversion.

Debtor does not want to liquidate in Chapter 7. Rather, the Debtor has expressed a desire to continue operating its custom cabinets business, even though that business is relatively small,[41] and there is no reason to think that the Debtor cannot continue to operate its custom cabinets business outside of bankruptcy. Nor has any creditor of the Debtor advocated for the conversion and liquidation of the Debtor in Chapter 7. There is no reason to think that a liquidation of the Debtor in Chapter 7 is in the best interests of the creditors or the estate.

Second, like the court in the *Way to Grow* case, discussed in Part III.F.2 of this Opinion, this Court sees "no practical alternative to dismissal" in this case. *See Way to Grow*, 597 B.R. at 132. Conversion is not a practical alternative. As discussed in Part III.E of this Opinion, the Court has ruled that the Debtor cannot reject (or assume) the November Lease under § 365(a), because that lease is not a lease or executory contract "of the debtor." That ruling will thwart the bankruptcy strategy in this case of the Debtor and its owner, Weaam Nocha. But even with that ruling, the continued pendency of this bankruptcy case, whether in Chapter 11 or in Chapter 7, creates an impossible situation for this Court.

One major problem has to do with the automatic stay. After this Court's ruling on the Debtor's Lease Rejection Motion, Weaam Nocha will be forced by the state court, under the State Court Decision, to sell the Nocha Property to MJCC, and MJCC then will become the owner of that property. As owner, MJCC will have the exclusive right to possession of the Nocha Property, under Michigan law. But the Debtor operates its custom cabinet business from

---

[41] The Debtor's monthly operating reports filed in this case show that the Debtor's income from its custom cabinets business is rather small. These reports show that the Debtor's *total* income was *zero* for the partial month of December 16-31, 2018 (Docket # 31 at 2); $16,000.00 in January 2019 (Docket # 62 at 2); $48,500.00 in February 2019 (Docket # 91 at 2); $10,000.00 in March 2019 (Docket # 103 at 2), and $13,000.00 in April 2019 (Docket # 112 at 2).

24

that property, and currently is in sole possession of that property. While this bankruptcy case remains pending, under either Chapter 11 or Chapter 7, the automatic stay will prevent MJCC from taking any action to wrest away possession of the Nocha Property from the Debtor, even after MJCC becomes the owner of the Nocha Property. *See*, *e.g.*, 11 U.S.C. §§ 362(a)(1), 362(a)(3);[42] *Convenient Food Mart No. 144, Inc. v. Convenient Indus. of Am., Inc.* (*In re Convenient Food Mart No. 144, Inc.*), 968 F.2d 592, 594 (6th Cir. 1992) (holding that a bankruptcy debtor in possession of real estate, which has no right to possession, but which has a "tenancy at sufferance" under Kentucky law, has a "possessory interest in real property" that is protected by the automatic stay); *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (holding that even a bankruptcy debtor's "bare possessory interest" in certain tooling was protected by the automatic stay, under 11 U.S.C. § 362(a)(3)).

In a normal case, when a bankruptcy debtor is in possession of real property that belongs to another person, and the debtor has no right to possession of that property under applicable non-bankruptcy law, it might be relatively easy for the owner of the property to file a motion seeking relief from the automatic stay, and obtain such relief. Such relief from the stay would be to permit that owner to prosecute an eviction action in an appropriate non-bankruptcy court, to obtain possession of the property. (MJCC has filed a motion for relief from stay in this case.)

But this is not a normal case. In this case, the Court likely would have to refuse to grant

---

[42] Under § 362(a)(1), the filing of the bankruptcy petition in this case operates as a stay, among other things, of the "commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." Under § 362(a)(3), the automatic stay prevents, among other things, "any act to obtain possession" not only of "property of the estate," but also of "property **from** the estate." (emphasis added).

25

any stay relief, or any other relief, requested by MJCC, because MJCC also has unclean hands. The granting of stay relief to MJCC obviously would assist MJCC in its efforts to open and operate a medical marijuana dispensary, in violation of federal law. Just as "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime," *Rent-Rite*, 484 B.R. at 805 (footnote omitted), neither can a federal court be asked to enforce any *creditor* protections under the Bankruptcy Code, such as the relief-from-stay provisions of 11 U.S.C. § 362(d), in aid of a *creditor's* commission of a federal crime.

This Court is unwilling and unable to assist a party like MJCC to violate federal law. So this Court likely would not grant stay relief to MJCC, even after MJCC became the owner of the Nocha Property.

Thus, the continuation of this bankruptcy case, under either Chapter 11 or Chapter 7, would leave the Court and the parties stuck in the middle of a continuing tug-of-war between two parties with unclean hands (the Debtor and MJCC), with the Court unable and unwilling to grant relief to either party. To use a metaphor employed by the UST, the only practical solution is to "cut the Gordian knot,"[43] by dismissing this case. Such dismissal is available here, at the request of a party that does *not* have unclean hands — the UST. And dismissal will leave the Debtor, Weaam Nocha, and MJCC to continue their battles in the state court, where those battles belong.

So the Court will dismiss this bankruptcy case. And in order to prevent any attempted evasion by anyone of the Court's decisions today, the Court will bar the filing of any new bankruptcy case, by or against the Debtor, for a period of two years. This should give ample time

---

[43] *See* UST Suppl. Br. (Docket # 96) at 2.

for the Debtor's pending state court appeal to conclude. Imposing this bar to a new bankruptcy filing is within the Court's discretion and authority, under 11 U.S.C. § 105(a), and also under 11 U.S.C. § 349(a). *See In re Packard Square LLC*, 575 B.R. 768, 783 (Bankr. E.D. Mich. 2017); *In re Packard Square LLC*, 577 B.R. 533, 537-38 (Bankr. E.D. Mich. 2017), *aff'd.*, 586 B.R. 853 (E.D. Mich. 2018)*; In re Skymark Properties II, LLC*, 597 B.R. 391, 403 (Bankr. E.D. Mich. 2019).

**G. Discussion of the Stay Relief Motion**

The Court's decision to dismiss this bankruptcy case will make MJCC's Stay Relief Motion moot. The automatic stay will terminate upon the dismissal of this case. *See* 11 U.S.C. §§ 362(c)(1) and 362(c)(2)(B). So the Court will deny the Stay Relief Motion, as moot.

**IV. Conclusion**

For the reasons stated in this Opinion, the Court will enter orders (1) denying the Debtor's Lease Rejection Motion; (2) granting the UST's Dismissal Motion, and dismissing this case, with a two-year bar to refiling; and (3) denying the Stay Relief Motion, as moot.

**Signed on May 21, 2019**

/s/ **Thomas J. Tucker**

**Thomas J. Tucker**
**United States Bankruptcy Judge**