UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                              Case No. 18-56801

BASRAH CUSTOM DESIGN, INC.,                         Chapter 11

        Debtor.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE DEBTOR'S MOTION FOR RECONSIDERATION**

**I. Introduction**

    This case is before the Court on the Debtor's motion for reconsideration, filed June 4, 2019 (Docket # 119, the "Motion"). In the Motion, the Debtor (sometimes referred to below as "Basrah"), seeks reconsideration of three of the four Orders entered in this case on May 21, 2019 (Docket ## 114, 115, and 116, collectively, the "May 21 Orders"). By those Orders, the Court: (1) denied the Debtor's motion to reject the November 2016 Lease;[1] (2) denied the Debtor's motion seeking a contempt finding and related relief against MJCC; and (3) dismissed this Chapter 11 bankruptcy case with a two-year bar to refiling.[2]

**II. Discussion**

    The Debtor's present Motion seeks reconsideration of all three Orders, arguing that every one of the Orders is erroneous. The Court disagrees, for the reasons stated in the Court's two written opinions filed May 21, 2019 (Docket ## 113, 114). For those reasons, and also for the reasons stated below, the Court will deny the Debtor's Motion, in its entirety.

---

    [1] In this Order, the Court will use abbreviated names and terms as they are defined in the Court's written opinion filed May 21, 2019, at Docket # 113.

    [2] Also on May 21, 2019, the Court entered an order denying MJCC's stay-relief motion, as moot. (Docket # 117).

**First,** the Court finds that the Motion fails to demonstrate any palpable defect[3] by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction thereof. *See* L.B.R. 9024-1(a)(3) (E.D. Mich.). Rather, for the most part,[4] the Motion merely re-argues the same issues that the Debtor argued before the May 21 Orders were entered.[5]

**Second**, the Court finds that the Motion fails to establish that any of the May 21 Orders at issue are erroneous or constitute an abuse of discretion, and the Motion fails to establish any other valid ground for relief from any of the Orders.

**Third,** the Court will respond to some of the specific arguments made in the Debtor's

---

[3]   A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest, or plain." *Fieger & Fieger P.C. v. Nathan* (*In re Romanzi*), No. 16-13986, 2017 WL 1130091, at *2 (E.D. Mich. March 27, 2017) (citations omitted).

[4]   A new argument, made for the first time by the Debtor in its motion for reconsideration, is discussed in footnote 11 of this Opinion.

[5]   This Court's local rule 9024-1(a)(3) states:

> Generally, and without restricting the discretion of the court, **a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted.** The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

L.B.R. 9024-1(a)(3) (E.D. Mich.) (emphasis added). *See also Fieger & Fieger P.C. v. Nathan*, 2017 WL 1130091, at *1. As the United States Court of Appeals for the Sixth Circuit has held, "reconsideration motions cannot be used as an opportunity to re-argue a case." *Bank of Ann Arbor v. Everest Nat'l Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014). Moreover, in a motion for reconsideration, a party may not "raise new legal arguments that could have been raised before a judgment was issued[,]" or "introduce evidence for the first time . . . where the evidence could have been presented earlier." *Id.*; *see also Fieger & Fieger, P.C. v. Nathan*, 2017 WL 1130091, at *2 ("'[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not.'") (citations omitted).

Motion, to elaborate further on why the Debtor's arguments are without merit.

> **A. The state court's finding that the Debtor, Basrah was the mere agent for the Property owner, Weaam Nocha under the November Lease.**

The Debtor disputes this Court's reading of the State Court Decision. The Debtor argues that the state court found that the only parties to the November Lease were the Debtor, Basrah (named in the lease as the "Landlord"), and MJCC (named in the lease as the "Tenant").

This Court concluded, however, that although the Debtor, Basrah, and not Weaam Nocha (the owner of the Nocha Property at issue), is named in the November Lease as the "Landlord," the state court found that the Debtor signed the November Lease *as agent of the Nocha Property owner (and the Debtor's 100% shareholder), Weaam Nocha*. In its written opinion filed May 21, 2019, at Docket 113 (the "May 21 Opinion"), this Court stated the following, among other things:

> The Debtor occupies and uses two conjoined buildings, located at 7451 and 7461 West 8 Mile Road, Detroit, Michigan. That real estate (the "Nocha Property") is owned by Weaam Nocha, who is the President and sole shareholder of the Debtor. It is undisputed that the Debtor is not, and never has been, an owner of the Nocha Property. (footnotes and extensive record citations omitted).
> . . .
>
> The November Lease named the Debtor as the "Landlord" and MJCC as the "Tenant," and it was signed on November 16, 2016 by Weaam Nocha for the Debtor, as "Its Owner," and by MJCC.
> . . .
>
> In the State Court Decision, the state court found and concluded, among other things, that:
>
> - at the time the November Lease was signed, the Nocha Property was owned solely by Weaam Nocha; [citing, in footnote 16, the following paragraphs in the State Court Decision: ¶¶ 155, 156, 168]; [and]

- Weaam Nocha signed the November Lease as an agent of the Debtor, ***and*** the Debtor in turn signed the November Lease as agent of and on behalf of the owner of the property at issue, Weaam Nocha; [citing, in footnote 17, the following paragraphs in the State Court Decision: ¶¶ 63, 124, 155, 156, 158, 165-170, 176].[6]

In footnote 17 of its May 21 Opinion, this Court further explained why it views the State Court Decision as having made the finding that the Debtor signed the November Lease only as agent for Weaam Nocha, such that Nocha and MJCC were the only real parties in interest under the November Lease:

> This latter finding of the state court, that the Debtor signed the November Lease as agent of and on behalf of the sole owner, Weaam Nocha, makes sense because the state court found that Weaam Nocha, not the Debtor, was the "sole owner" of the Nocha Property. Moreover, Weaam Nocha's status as the real party-in-interest lessor under the November Lease is clearly implied in the state court's findings that (1) "as the sole owner of the [Nocha] Property, Mr. Nocha had full authority to grant possessory rights to the [Nocha] Property;" *id.* at ¶ 158; and (2) the Debtor had the authority, as agent, to bind Weaam Nocha to "lease the [Nocha] Property;" *see id.* at ¶¶ 165-167, 170.[7]

Thus, the Debtor is mistaken in arguing that this Court has misread the State Court Decision.

Among other things that further support this Court's reading of the State Court Decision are the following.

First, as discussed in the Court's May 21 Opinion, an important component of the November Lease included the option it gave to MJCC to purchase the Nocha Property, for $1.2

---

[6] May 21 Opinion (Docket # 113) at 3, 4, 6.

[7] May 21 Opinion (Docket # 113) at 6 n.17.

4

million.⁸ Clearly, only the *owner* of the Nocha Property could legally give such an option, and could perform such an option by selling the property to MJCC, and the only owner of the Nocha Property was Weaam Nocha. Yet *all* of the language in the November Lease concerning the $1.2 million option to purchase referred to the seller's obligations as being those of the "Landlord" (which term is defined in the first paragraph of the Lease as the Debtor, Basrah). For example, ¶ 40 of the November Lease, captioned "Option to Purchase," grants the option in this way: ". . . Tenant shall have the option during the Term to purchase the [Nocha] Property *from Landlord* for the sum of [$1.2 million], as set forth in Exhibit C."⁹ Exhibit C, in turn, says among other things that upon exercise of the purchase option by "Tenant" (*i.e.*, MJCC), at closing, MJCC "shall (a) pay *to Landlord* the purchase price in certified funds" and "*Landlord* shall: (a) execute and deliver a warranty deed for the [Nocha] Property."¹⁰ These references to the "Landlord" must be references to the only owner of the Nocha Property, *i.e.*, Weaam Nocha. They could not have been references to the Debtor, Basrah, in its own capacity, since it was clear (as the state court found) that the Debtor was not the owner of the Nocha Property, and therefore could not possibly transfer ownership of the Nocha Property to a buyer like MJCC.¹¹

---

⁸   *See id.* at 4 & n. 10.

⁹   November Lease (Docket # 41-1) at 12, ¶ 40 (emphasis added).

¹⁰   Ex. C to November Lease at 2, ¶¶ 5, 6.

¹¹   This also undercuts the Debtor's "sub-lease" argument, which is made for the first time in Debtor's motion for reconsideration. That argument must be rejected, both on the merits, and because it is impermissible for the Debtor to make the argument for the first time in a motion for reconsideration. *See* authorities cited in footnote 5 of this Opinion. The Debtor argues that "[i]n essence, while not explicitly stated," the state court found that the Debtor Basrah "was a tenant in possession of the [Nocha P]roperty (Mr. Nocha's lessee) such that Basrah had the right to sub-lease the property to MJCC." (Debtor's Mot. Br. (Docket # 119-1) at 8). There is no hint of any findings to this effect in the State Court Decision. Nor is there any hint in the State Court Decision, or in the record before this Court, that

Given all of this, and also given the language used by the state court in its findings, quoted above, it is clear that the State Court Decision found that the Debtor, Basrah, signed the November Lease as "Landlord" only as agent of and on behalf of the owner of the Nocha Property, Weaam Nocha.

There is a second additional reason that supports this Court's reading of the State Court Decision. This is in the state court's findings, in discussing how **Weaam Nocha** had the legal authority to enter into the November Lease, **without the agreement of his wife, Rafaa Nocha**. If the Debtor, Basrah, was the real party in interest as the named "Landlord" in the Lease, rather than Weaam Nocha, this discussion in the State Court Decision would have been entirely unnecessary. And in this discussion, the State Court Decision makes clear that it was **Weaam Nocha** who conveyed to MJCC the leasehold rights to possession and the option to purchase the Nocha Property, *not* the Debtor, Basrah. The state court stated:

> 155. **At the time the November Lease was signed Mr. Nocha was the sole owner of the [Nocha] Property**. This is reflected on several documents, including, but not limited to, the January 1, 2016 lease between Mr. Nocha and Alvin Alosachi, the [Nocha] Property title report, and on a number mortgages and other documents filed with the Wayne County Register of Deeds.
>
> 156. **Based on the documents, it is clear that Mr. Nocha was the sole owner of the [Nocha] Property** and that Rafaa did not have any interest therein.
>
> 157. But even if Rafaa did have any interest in the [Nocha] Property at the time the November Lease was executed, Michigan courts have long held that **a husband can lease property held as tenants by the entirety without his wife's approval**. [citation

---

there was any lease between Weaam Nocha and the Debtor. Of course, even if there had been such a lease, that would not have given the Debtor, Basrah, the legal authority to agree to give MJCC an option to *purchase* the Nocha Property, other than as agent for, and on behalf of, Weaam Nocha.

omitted].

> 158. **Accordingly, as the sole owner of the [Nocha] Property, Mr. Nocha had full authority to grant possessory rights to the [Nocha] Property.**[12]

This Court has correctly interpreted the State Court Decision. And, as the Debtor admits, the findings and conclusions of the state court are binding on this Court and the parties in this bankruptcy case, under the doctrine of collateral estoppel.

**B. The state court's findings that *all* of the members of the Nocha family who were state court defendants, including the Debtor, Basrah's 100% owner Weaam Nocha, tortiously interfered with MJCC's rights under the November Lease, in part, by taking action to open a marijuana dispensary on the Nocha Property**

The Debtor argues that the State Court Decision did not find that Weaam Nocha ever attempted to open a marijuana dispensary business himself on the Nocha Property. The Debtor is simply wrong about this.

The Debtor bases its argument on paragraphs 129 and 130 of the State Court Decision. In those paragraphs, the state court discussed MJCC's tort claim that the state court called a "Concert of Action" claim. The Debtor points out that the state court declined to find that all of the state court defendants acted with a "common design" to operate a marijuana dispensary.[13]

In making this argument, the Debtor's Motion completely ignores what the state court went on to find, later in its decision, about MJCC's claim that several of the state court defendants tortiously interfered with MJCC's contract rights under the November Lease. The state court found that the following state court defendants — Weaam Nocha; Rafaa Nocha;

---

[12] State Court Decision (Docket # 41-4) at 23-24, ¶¶ 155-58 (emphasis added).

[13] *See* Debtor's Mot. Br. (Docket # 119-1) at 10-11.

7

Holden Dawood; and DMCC — tortiously interfered with MJCC's rights under the November Lease and with MJCC's business. And how, according to the state court, did they do that? ***By undertaking their own efforts to open and operate a marijuana dispensary on the Nocha Property.*** The State Court Decision clearly found that the Debtor, Basrah's 100% owner, Weaam Nocha, did this. The state court found:

> 139. Here, **defendants Mr. Nocha**, Rafaa, Holden, and DMCC tortiously interfered with the November Lease and with MJCC's business.
>
> 140. Instead of honoring the November Lease, **Defendants** undertook their own efforts to obtain a medical marijuana dispensary license and to operate a dispensary at the property.[14]

Next, the State Court Decision described in detail the many steps that these defendants, including Weaam Nocha, took to try to open and operate their own medical marijuana dispensary on the Nocha Property. In repeatedly referring to these actions by "Defendants," the state court clearly included the defendants named in paragraph 139 of the State Court Decision, which included Weaam Nocha. Immediately after making the findings in paragraphs 139 and 140, quoted above, the state court found the following:

> 141. On December 12, 2016, less than one month after signing the Lease, **Defendants** formed DMCC, LLC for the purpose of opening their own dispensary. Holden is the registered agent of DMCC and he and Rafaa are members of DMCC.
>
> 142. On December 21, 2016, unbeknownst to MJCC[,] Holden, on behalf of DMCC, applied for a permit with the City of Detroit to improve and ultimately operate a medical marijuana dispensary at the [Nocha] Property.
>
> 143. In the application, Holden, Mr. Nocha and Rafaa's son,

---

[14] State Court Decision (Docket # 41-4) at 21, ¶¶ 139-40 (emphasis added).

identified Mr. Nocha and Basrah as the owners of the [Nocha] Property. The stated reason for the application was to "[e]stablish a Medical Marihuana Caregiver Center."

144. On April 3, 2017, Holden wrote a letter on behalf of DMCC, LLC, requesting that the City of Detroit freeze building permit number (CASE#) BLD2016-0S661 in the name of NSI Construction, Mr. Beydoun's company retained by MJCC to make improvements to the [Nocha] Property. NSI Construction properly obtained the permit for the [Nocha] Property in order to improve the [Nocha] Property in a manner and on a timetable that would comply with the Conditional Approval issued to MJCC. Dawood's letter states "Please freeze this permit ASAP I do not want any unforeseen circumstances to delay my project with their being two permits pulled for the same address . . . DMCC, LLC is the current permit holder and all inspections will be ordered under (CASE#) BLD2016-09744."

145. On May 18, 2017, DMCC, LLC obtained a certificate of occupancy and compliance from the City of Detroit.

146. On May 23, 2017, DMCC, LLC obtained a nontransferable license from the City of Detroit to operate a medical marijuana dispensary.

147. **In addition to these actions, Defendants also** submitted plans for development of the [Nocha] Property designed by Mr. Beydoun for MJCC to the City of Detroit without Mr. Beydoun's knowledge or permission.

148. Each of these actions amount to tort[i]ous interference with the Lease either by refusal to permit Basrah to carry out the terms of the Lease or by taking affirmative actions intended to prevent MJCC from realizing the benefits of the Lease.

149. MJCC has also lost the ability to realize profits in connection with the dispensary, which was specifically contemplated in the Lease.

150. Accordingly, MJCC is entitled to judgment in its favor on its tortious interference claim.[15]

---

[15] *Id.* at 21-22, ¶¶ 141-150 (emphasis added) (footnote omitted).

Given these findings in the State Court Decision, this Court clearly was correct in its May 21 Opinion, in concluding that the Debtor filed this bankruptcy case with unclean hands, and for an improper purpose that is inconsistent with federal criminal law. As this Court stated:

> **It is clear and obvious** to this Court, from the findings and conclusions in the State Court Decision, that the Debtor's sole shareholder, Weaam Nocha, caused the Debtor to file this bankruptcy case for the sole purpose of evading the State Court Decision, and avoiding the enforcement of the November Lease, so that Weaam Nocha does not have to sell the Nocha Property to MJCC for only $1.2 million. Weaam Nocha obviously wants to realize more money for himself, as owner of the Nocha Property, than what the enforcement of the State Court Decision will give him, either by (1) renting or selling the Nocha Property to MJCC, or to some other marijuana dispensary business, for a higher rent or a higher sale price than $1.2 million; or (2) using the [Nocha P]roperty to operate a marijuana dispensary himself, as he started to do with the help of his immediate family members before the State Court Decision was issued. Weaam Nocha did not cause the Debtor to file this bankruptcy case for the benefit of the Debtor or the Debtor's creditors, but rather solely for his own benefit — a benefit that depends on activity that is illegal under the CSA.
>
> Borrowing from the words used by the UST in its motion, Weaam Nocha wants to use this bankruptcy case "to set aside this illegal contract [*i.e.*, the November Lease] so that he can negotiate a better illegal contract."
>
> Under Weaam Nocha's control, the Debtor denies these things. But these denials are precluded by the State Court Decision's findings and conclusions. **The Debtor and Weaam Nocha both are bound by the findings and conclusions in the State Court Decision, under the doctrine of collateral estoppel. That means that they are precluded from now making assertions that are contrary to the findings and conclusions of the State Court Decision. And those findings and conclusions**, described in Part III.C of this Opinion, **inescapably lead to this Court's conclusions of what that the actual purpose of this bankruptcy case is.**
>
> **The assertion that the Debtor, Weaam Nocha, and his family**

> do not want the Nocha Property to be used or involved in the
> marijuana business, especially, is belied by the state court's
> detailed findings about all the efforts Weaam Nocha and his
> family went to in order to operate their own marijuana
> dispensary business at the Nocha Property, after refusing to
> honor the November Lease with MJCC. And then, only nine
> days after losing the State Court Lawsuit, Weaam Nocha
> caused the Debtor to file this bankruptcy case (1) to try to
> "reject" the November Lease under Bankruptcy Code § 365;
> and (2) to try to obtain the benefit of the automatic stay to
> delay MJCC's obtaining ownership of the Nocha Property
> while Weaam Nocha, the Debtor, and the other state court
> defendants appeal the State Court Decision.
>
> The actual purpose of filing and prosecuting this bankruptcy case is
> for the Debtor and its 100% shareholder to use this bankruptcy
> court, and the Bankruptcy Code, to assist them in obtaining a result
> that is contrary to federal criminal law under the Controlled
> Substances Act, and therefore contrary to federal public policy.
>
> This federal court cannot allow itself to be used in this way. The
> Court finds that the Debtor has unclean hands, and that there is
> "cause" to dismiss or convert this case, under 11 U.S.C.
> § 1112(b)(1).[16]

**C. This Court's dismissal of this case could easily be evaded without the 2-year bar to refiling; the bar to refiling is necessary to prevent an abuse of the bankruptcy system that would occur if the bankruptcy case were simply refiled.**

The Debtor argues that it was an abuse of discretion for this Court to impose a 2-year bar to the Debtor filing a new bankruptcy case after the dismissal of this case. The Debtor seems to acknowledge that this Court has discretion to bar a debtor from refiling one or more bankruptcy cases, if such refiling would be an abuse of the bankruptcy system.[17] But, the Debtor says, it should be able to file a new bankruptcy case because that would not be an abuse of the system.

---

[16] May 21 Opinion (Docket # 113) at 21-23 (footnotes omitted).

[17] *See* Debtor's Mot. Br. (Docket # 119-1) at 15.

11

The Court disagrees.

This Court dismissed this case because it found the Debtor to have unclean hands, and to have filed this case solely for an improper purpose that is inconsistent with federal criminal law. Absent a bar of the type the Court imposed, the Debtor could react to the dismissal of this case by simply filing a new bankruptcy case immediately. Under the circumstances, that would be an abuse of the bankruptcy system, because it would serve no legitimate, proper purpose. And it would result in a new automatic stay arising, which would have the effect of once again precluding MJCC from seeking to enforce its right to obtain possession of the Nocha Property, even if and after it became the owner of that property as ordered by the State Court Decision. *See* this Court's two May 21 Opinions.[18]

This Court chose a 2-year length of time for the bar to refiling in order to give time for the Debtor's pending state court appeal to proceed and conclude. If that appeal process results in a reversal or modification of the State Court Decision, then the basis for this Court's dismissal decision might be undermined, in whole or in part. That sort of change in circumstances might justify the Debtor making a new effort to file bankruptcy, and to try to show that it has done so for a legitimate, permissible purpose. Of course, if the state appeal process results in a modification or reversal of the State Court Decision in less than 2 years from now, the Debtor could file a motion in this dismissed case seeking a modification of the 2-year bar, to permit a new bankruptcy filing at that time. *See, e.g.*, Fed. R. Civ. P. 60(b)(5), which is generally applicable in bankruptcy cases under Fed. R. Bankr. P. 9024.

Under these circumstances, the Court reiterates what it stated in the May 21 opinion:

---

[18] *See* May 21 Opinion (Docket # 113) at 24-26; May 21 Opinion (Docket # 114) at 2-3.

> [I]n order to prevent any attempted evasion by anyone of the Court's decisions today, the Court will bar the filing of any new bankruptcy case, by or against the Debtor, for a period of two years. This should give ample time for the Debtor's pending state court appeal to conclude. Imposing this bar to a new bankruptcy filing is within the Court's discretion and authority, under 11 U.S.C. § 105(a), and also under 11 U.S.C. § 349(a). *See In re Packard Square LLC*, 575 B.R. 768, 783 (Bankr. E.D. Mich. 2017); *In re Packard Square LLC*, 577 B.R. 533, 537-38 (Bankr. E.D. Mich. 2017), *aff'd.*, 586 B.R. 853 (E.D. Mich. 2018); *In re Skymark Properties II, LLC*, 597 B.R. 391, 403 (Bankr. E.D. Mich. 2019).[19]

## III. Conclusion

For the reasons stated in this Opinion, the Court will enter an Order denying the Debtor's Motion (Docket # 119) in its entirety.

**Signed on June 18, 2019**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge

---

[19] May 21 Opinion (Docket # 113) at 26-27.